IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>KEVIN GEORGE SMITH<br>and SARAH BETH SMITH,<br>Debtors, | Chapter 7 Bankruptcy<br>Case No. 24-00638 |
| RENEE HANRAHAN, in her sole capacity as Trustee,<br><br>Plaintiff,<br><br>Vs.<br><br>CRAIG ABRAHAM,<br><br>Defendant. | Adversary Case No. 24-09068<br><br>ANSWER TO COMPLAINT |

COMES NOW Craig Abraham (the "Defendant"), who files this Answer to the Complaint (the "Complaint") filed by Renee Hanrahan, in her sole capacity as Trustee, (the "Plaintiff") and in support thereof states as follows:

1. On July 3, 2024, the Debtors Kevin Smith and Sarah Smith filed a voluntary Chapter 7 Petition in this Court.

    **ANSWER**: Deny for lack of knowledge.

2. The Defendant Craig Abraham ("Defendant" or "Craig") was and is the father of Debtor Sarah Smith.

    **ANSWER**: Admit.

3. The Defendant resides within the State of Iowa.

    **ANSWER**: Admit.

4. This Court has subject matter jurisdiction of this Complaint by operation of 28 U.S.C. §§157 and 1334, F.R.B.P. 7001, and 11 U.S.C. §§541, 544, 548, 550, and 551.

   **ANSWER**: Legal conclusion that does not require an answer.

5. Venue is proper in this Court and District by operation of 28 U.S.C. §1409.

   **ANSWER**: Legal conclusion that does not require an answer.

6. This is a core proceeding by operation of 28 U.S.C. §157(b)(2)(A) and (H) an (O).

   **ANSWER**: Legal conclusion that does not require an answer.

7. To the extent, if at all, that this Complaint does not involve a core proceeding, the Plaintiff consents to the entry of a final Judgment and Conclusions of Law by this Court.

   **ANSWER**: Deny for lack of knowledge.

8. On or about March 12, 2024, the Debtors signed a note and delivered a mortgage to Craig, relative to the real estate with a property address of 1870 Wood Duck Ct., North Liberty, IA 52317 ("Home").

   **ANSWER**: Admit.

9. The Debtors resided in the Home as their homestead at all times relevant to this Complaint.

   **ANSWER**: Deny for lack of knowledge.

10. At the time of the delivery and execution of the aforementioned mortgage against the Home, and since then through and including the filing of the Chapter 7 Petition, the Debtors were insolvent, viz, the Debtors had more liabilities than assets (at fair valuation). By way of example, as of the Chapter 7 Petition filing date, the Debtors swore on their Schedules that they had liabilities of $2,867,958, and assets of $523,204. Further, as sworn by the Debtors on their Statement of

Financial Affairs, during the time period between the Petition Date and the date of signature and delivery of the aforementioned note and mortgage, the Debtors did not transfer any assets that would have significantly changed their liabilities and assets from what they had displayed on their sworn Schedule. As such, the Plaintiff asserts that as the delivery and execution of the aforementioned mortgage and note, the Debtors had more liabilities than assets (at fair valuation) and were therefore insolvent.

**ANSWER**: Deny for lack of knowledge.

11. The Home was a significant asset of the Debtors, with a value of $405,000, according to their sworn Schedules. Indeed, according to the Debtors' Schedules, there was not one item that was worth anywhere close to the value of the Home displayed on the Debtors' Schedules.

    **ANSWER**: Deny for lack of knowledge.

12. The transfer and delivery of the aforementioned note and mortgage was a voluntary act on the part of the Debtors.

    **ANSWER**: Deny for lack of knowledge.

13. Subsequently, Craig recorded the aforementioned mortgage on March 13, 2024.

    **ANSWER**: Admit.

14. As of the date of recording of the aforementioned mortgage, the Debtors were also insolvent. See ¶10 supra.

    **ANSWER**: Deny for lack of knowledge.

15. At the time of the delivery and execution of the aforementioned note and mortgage, and indeed the time of the recording of the mortgage, both the Debtors personally were faced with a Notice from the Iowa Department of Revenue, to the effect that the Debtors were personally liable with respect to unpaid sales taxes incurred in

the Debtors' Subway franchise business, to the extent of approximately $70,000. Also, as of the date of execution of the note and mortgage, the Debtors faced at least one lawsuit filed by River View on First, LLC, pending in Johnson County District Court, and indeed a Judgment of more than $76,000 was eventually entered against the Debtors in that lawsuit.

**ANSWER**: Deny for lack of knowledge.

16. The Debtors were also indebted to the federal government, in the amount of at least $3,000 plus an "unknown amount" as revealed in their sworn Schedule F.

**ANSWER**: Deny for lack of knowledge.

17. The Debtors effectuated the transfer of the Home via the aforementioned note and mortgage with an actual intent to hinder or delay or defraud creditors of this Estate, such as but not limited to the United States with respect to the student loan and SBA obligations, as well as other creditors (such as those listed on Schedule F sworn to by the Debtors, including creditors with claims against the Debtors as of, before, and after the execution and delivery of the note and mortgage by the Debtors), of the Debtors and of this Estate, as evidenced by the facts that (a) the Debtors were insolvent at the time of the transfer; (b) the Home was a significant and most valuable asset of the Debtors; (c) Craig was an insider of the Debtors; (d) the Debtors were threatened with collection action for $70,000 from the Iowa Department of Revenue and also were faced with a lawsuit that eventually resulted in a $76,000 Judgment; and (e) the Debtors did not reaffirm the note with the Defendant, even though the Debtors did reaffirm debts with non-insiders such as, for example, U S Bank with respect to the Home; indeed, since the Debtors did receive a discharge and did not reaffirm the note with Craig, Craig legally cannot enforce the note as a personal obligation of the Debtors. Further,

the note contained terms in favor of the Debtors that either (f) were not otherwise available to the Debtors at the time of execution of the note (such as payment only annually, and only of interest) or (g) granted much lower than rates that the Debtors would have been charged by a non-related and non-insider lender (such as a bank or credit union) viz. the note had a rate of 4.13%, which was much lower than the 8% rate likely charged by banks and credit unions at that time, and which was close to or at the co-called "Minimum Interest" rate mandated by applicable Internal Revenue Code and Regulations. The presence of these seven and other factors confirm the Debtors' intent to hinder or delay or defraud, within the meaning of 11 U.S.C. §548 and 28 U.S.C. §§3301 et seq., and the Trustee is entitled to void the note and mortgage.

**ANSWER**: Deny for lack of knowledge and the documents speak for themselves.

18. By operations of 11 U.S.C. §544 and the presence of debts due the United States, the provisions of 28 U.S.C. §§3301 et seq. apply to this Complaint, and 11 U.S.C. §544 enables the Trustee to utilize the provisions in 28 U.S.C. §§3301 et seq. to void the transfer of the aforementioned note and mortgage.

**ANSWER**: Legal conclusion that does not require an answer.

WHEREFORE the Defendant prays that the Court dismiss the Complaint.

Respectfully submitted,

AEGIS Law,

*Eric J Langston*

Eric J. Langston, AT0014001
Mailing:   601 S. Lindbergh Blvd.
           Frontenac, MO 63131
Physical:  222 Third Ave. SE
           Suite 501, Office 6
           Cedar Rapids, IA 52401
(319) 435-9793, Fax: (314) 454-9110
elangston@aegislaw.com
           Attorney for Defendants

---

**Certificate of Service**

I certify that I caused the foregoing to be filed with the EDMS on January 3, 2025, and mailed, as necessary to those parties not registered with EDMS, via USPS first-class, postage fully prepaid.

*Eric J Langston*